**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN THE MATTER OF
THE EXTRADITION OF
RIZA HOXHA,                                              **CASE NO. 05-M-343-TBM**
_____/

**ORDER ON THE REQUEST FOR EXTRADITION OF**
**RIZA HOXHA BY ALBANIA**

Before this court is the matter of the extradition of Riza Hoxha, whose extradition is

sought by the Republic of Albania (hereinafter "Albania") pursuant to the Extradition Treaty

(hereinafter "the Treaty") entered on March 1, 1933, between the United States of America

and Albania, and in force and effect as of November 14, 1935, (49 Stat. 5313).


I.

Pursuant to 18 U.S.C. § 3184, a warrant directing the provisional arrest of Mr. Hoxha

was executed on July 21, 2005. Upon his arrest, he appeared before Magistrate Judge Mary S.

Scriven and was advised of the proceedings against him and appointed counsel. At the initial

proceeding, Mr. Hoxha contested his identity as the person sought on the complaint. After a

hearing, Judge Scriven found sufficient evidence of the identity of Mr. Hoxha as the individual

sought by the request for extradition to detain him pending a hearing.

The Extradition Hearing was conducted on August 15, 2005. Mr. Hoxha was

represented by attorney Bryant Camareno. The Government of the United States, acting in its

capacity as the legal representative of Albania, was represented by Lt. Diane Croff, a Special

Assistant United States Attorney.  The Government introduced documentary exhibits in support of Albania's request for extradition and called FBI Special Agent Kenneth Lovette on the issue of identity.  Mr. Hoxha gave testimony as well.

The court has reviewed the entirety of the documents submitted by the Government on behalf of Albania.  Such documents are to be received as evidence if they are duly authenticated in accordance with the law.  See 18 U.S.C. § 3190.  To this end, the documents are submitted upon the declaration of Virginia Prugh, Attorney Advisor, Office of Legal Advisor, United States Department of State.  Ms. Prugh certifies that each of the documents submitted by Albania has been certified by Susan Lively, Consul of the United States of America at Tirana and the principal consular officer of the United States in Albania at the time of her certification.  See (Gov't Exh. 3, composite).

Ms. Lively's certification attests that the documents submitted and proposed to be used on the request for extradition are "properly and legally authenticated so as to entitle them to be received in evidence for similar purposes of the tribunals of Albania, as required by the Act of Congress of August 3, 1882."  Id.  This certification follows that of Fatmir Xhafaj, Minister of Justice in Albania.  Id

Pursuant to the provisions of 18 U.S.C. § 3190, the court finds that the documents submitted by the government on behalf of Albania have been properly and legally authenticated and appropriately certified by the principal diplomatic or consular officer of the United States residing in Albania at the time of the certification, and, thus, are competent evidence in these proceedings.

2

II.

The documentary evidence establishes the following.  Pursuant to Diplomatic Note No. 84/05, dated March 3, 2005, Albania has requested the United States Department of State to extradite Mr. Hoxha to serve a sentence upon a conviction for murder.

In accordance with this request and with Article 11 of the Treaty, Albania has submitted the decision of the Court of First Instance of Fier, dated October 22, 1998, wherein Mr. Hoxha was found guilty *in absentia*[1] on the offense of premeditated murder.[2]  The court documents from Albania also reflect that he was sentenced to twenty (20) years imprisonment on the offense.

In addition, documents submitted by Albania include notes from the police investigation of the scene of the crime, a report concerning the examination of the corpse of Haki Duka, the deceased, and provisions from Albania's penal code setting forth the penalties for premeditated homicide.  By the police investigation, on May 4, 1997, the deceased was traveling home after a day at the market with Behar Duka and another.  Near an irrigation canal of the Kunjan Lake near Fier, they passed Mr. Hoxha.  After passing him, there were gunshots.  When Behar Duka looked back, he saw Haki Duka falling from his horse.  Mr. Hoxha was seen taking his sub-machine gun and leaving the scene.  According to witness

---

[1]Documents from Albania also reflect a decision dated June 22, 1998, ordering the arrest and detention of Mr. Hoxha and a decision of September 4, 1998, concluding that Mr. Hoxha was a missing person and that counsel should be appointed in his absence.  This finding was made after repeated efforts to summons Mr. Hoxha before the prosecuting authority were unsuccessful.

[2]The decision reflects conviction for illegal carrying of weapons as well.  However, the United States prosecutor has indicated that she does not seek extradition on that matter.

3

Behar Duka, Mr. Hoxha was a person he knew. This witness opined that the murder was in retribution for an incident between the deceased and Mr. Hoxha's family that occurred twenty years previous. The statement by Behar Duka appears to have been made under oath and advisement of perjury. Among other items, fifteen cartridges and blood evidence were recovered from the scene of the shooting.

The medical examination of the deceased revealed at least three gunshot wounds, with the most serious entering the deceased's left temple, transversing his brain and exiting on the right side of his head.

Under the Albanian Penal Code, Article 78, a person convicted of premeditated homicide shall be punished by a term of fifteen to twenty-five years imprisonment; however, if such premeditated homicide is committed in the interest of revenge or blood feud, the punishment prescribed is not less than twenty years imprisonment nor more than life in prison.

III.

The matter of international extradition is governed by 18 U.S.C. §§ 3184, et seq. In pertinent part, 18 U.S.C. § 3184 states,

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, . . . any magistrate judge authorized so to do by a court of the United States . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, . . . issue his warrant for the apprehension of the person so charged, that he may be brought before such . . . magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or

4

convention, . . . he shall certify the same, together with a copy of all the
testimony taken before him, to the Secretary of State, that a warrant may
issue upon the requisition of the proper authorities of such foreign
government, for the surrender of such person, . . .

In pertinent part, the Treaty at Article I states,

It is agreed that the Government of the United States and the
Government of Albania shall, upon requisition duly made . . .,
deliver up to justice any person who may be charged with, or
may have been convicted of, any of the crimes or offenses
specified in Article II of the present Treaty committed with-
in the jurisdiction of one of the High Contracting Parties, . . .
provided that such surrender shall take place only upon
such evidence of criminality, as according to the laws of the
place where the fugitive or person so charged shall be found,
would justify his apprehension and commitment for trial
if the crime or offense had been there committed.

The pertinent part of Article II states,

Persons shall be delivered up according to the provisions of the present
Treaty, who shall have been charged with or convicted of any of the
following crimes or offenses:

1. Murder, (including crimes designated by the terms parricide, poisoning, and
infanticide); manslaughter when voluntary.

Courts have formed various formulations of the proof necessary to sustain a request

for extradition. In simplest terms, the burden on the Government at an extradition hearing is

to prove "evidence sufficient to sustain the charge [against the defendant] under the provisions

of the proper treaty or convention." Kastnerova v. United States, 365 F.3d 980, 984 n. 5 (11th

Cir. 2004). The inquiry is not into the guilt or innocence of the accused, but only "to see if

there is evidence sufficient to show reasonable ground to believe the accused guilty." Id. at

987 (quoting Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969)). Thus, the court's inquiry

5

is generally said to entail consideration of four elements: 1) the existence of an extradition treaty and whether the crime for which the accused is sought is an extraditable offense; 2) whether the accused is the individual sought on the criminal charge; 3) whether there is probable cause to believe that the accused is guilty of the charge pending against him in the requesting state; and 4) whether the crime alleged to have been committed is punishable both in the requesting and the requested state. See 18 U.S.C. § 3184; United States v. Peterka, 307 F. Supp .2d 1344, 1349 (M.D. Fla. 2003) (citing United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1360-61 (S.D. Fla. 1999)); Republic of France v. Moghadam, 617 F. Supp. 777 (N.D. Cal. 1985).

    1)  The existence of a Treaty and the criminal charge or conviction.

Here, it is not disputed that there exists a valid extradition treaty between the United States of America and Albania and that a charge of murder or a conviction for murder is an extraditable offense under the Treaty.

    2)  Whether Mr. Hoxha is the individual sought on the criminal charge in Albania.

Mr. Hoxha has twice contested his identity before this court as the individual sought by Albania. In initial proceedings, the magistrate judge determined from the proffered evidence that he was the individual sought under the criminal complaint. At the extradition hearing, the United States presented testimony from Agent Kenneth Lovette on the efforts he made to confirm the identity of Mr. Hoxha as the individual sought by Albania prior to his

6

provisional arrest.  The court concludes from the testimony of Agent Lovette and the

documentary exhibits introduced therewith, that Mr. Hoxha is in fact the individual sought.[3]

      3)  <u>Whether there is probable cause to believe Mr. Hoxha is guilty of the charge of</u>

<u>murder</u>.

      The United States, on behalf of Albania, maintains that evidence of Mr. Hoxha's

conviction is sufficient, in and of itself, to satisfy this element of the extradition inquiry and

apart from the documentary evidence, it offers no additional testimony.  In essence, Mr.

Hoxha testifies that he is innocent of this crime and that he was in Greece at the time of the

murder.  He claims that he once was a police officer and arrested many people in Albania.

According to him, those people are the cause of his problems.  He also claims that terrorists

want his return to Albania because others of his family are dead.  He claims he left Albania to

work in Greece on April 15, 1998.  He returned to Albania in October and questions why the

court did not summons him.  He testifies that he left Albania in January 1999 because he was

afraid of groups there.  He traveled from Italy to France and then to Great Britain, and when

he felt threatened there in 2001, he left for Canada and eventually the United States where he

---

[3]According to Agent Lovette, prior to the provisional arrest of Mr. Hoxha, the FBI requested confirmation from Albania that he was wanted for murder and that Albania was seeking his extradition.  A photograph of Mr. Hoxha obtained from the State of Florida Department of Highway Safety and Motor Vehicles was submitted by the FBI to Interpol in Tirana, Albania.  On January 15, 2005, Interpol Tirana confirmed the identity of Mr. Hoxha and the request for his provisional arrest pending extradition for the homicide of Haki Duka.  <u>See</u> Gov't Exhs. 1, 2.  Additionally, the certified documents from Albania include personal identifiers of Mr. Hoxha.  These identifiers are consistent with personal identifiers obtained by the FBI at the time of his arrest in the Middle District of Florida.  Furthermore, Mr. Hoxha concedes the photograph used to obtain confirmation of his identity is of himself.  By his testimony, he fled Albania prior to this incident.  Thus, he protests his innocence, not that he is not the person wanted in this matter.

admits he obtained an illegal entry with false documents.  He believes that this is occurring because the police offered him work he didn't want to do and now they are sending him back.

It appears the general rule that a duly authenticated judgment of conviction entered in a foreign court after a trial at which the accused was present is sufficient to establish probable cause to extradite the person convicted.  See Spatola v. United States, 925 F.2d 615, 618 (2nd Cir. 1991)(citing Restatement (Third) of the Foreign Relations Law of the United States § 47 comment b (1987)).  However, where the conviction was *in absentia*, the Second Circuit has determined that the mere showing of a conviction *in absentia* is insufficient to satisfy this element.  Thus, in the Second Circuit, a conviction *in absentia*, while pertinent to the analysis of the sufficiency of the evidence, "is not conclusive proof of probable cause to extradite."  See In re Ribaudo, Case No. 00 Crim. Misc. 1PG, 2004 WL 213021, *4 (S.D.N.Y. 2004) (citing Gallina v. Fraser, 278 F.2d 77,79 (2d Cir. 1960)).  Consequently, when the person has been convicted *in absentia*, the necessary inquiry under 18 U.S.C. § 3184 must include an independent determination of probable cause.[4]  Id.

Here, as in Ribaudo, the Treaty distinguishes between those who have been convicted of crimes and those who have not.  In pertinent part, it states at Article XI,

> If the fugitive criminal shall have been convicted of
> the crime or offense for which his surrender is asked, a
> copy of the sentence of the court before which such
> conviction took place, duly authenticated, shall be produced.
> If, however, the fugitive is merely charged with crime, a

---

[4]The court has found no similar authority in this Circuit.  However, the same approach has been taken by the Sixth Circuit.  See Argento v. Horn, 241 F.2d 258, 264 n. 1 (6th Cir. 1957) (stating when conviction resulted from a trial in absentia, it is regarded as a charge requiring independent proof of probable cause).

8

> duly authenticated copy of the warrant of arrest in the country
> where the crime was committed shall be produced, together
> with the evidence of criminality mentioned in Article I.

A plain reading of the Treaty suggests that the Government is correct in its assertion that it need make no greater showing on the matter of probable cause beyond introducing the judgment and sentence for Mr. Hoxha in the Albanian court. However, given the persuasive authority in the Second and Sixth Circuits, the court will further address the matter of probable cause.

As noted above, an extradition hearing is "essentially a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation." Ward v. Rutherford, 921 F.2d 286, 287 (D.C. Cir. 1990) (citation omitted). In such proceedings, the function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial and not determine whether the evidence is sufficient to justify a conviction. Collins v. Loisel, 259 U.S. 309, 314-15 (1922). Case law suggests various formulations of the probable cause determination, such as that traditionally associated with probable cause/preliminary hearings or such as whether the evidence establishes a "prima facie" case of guilt sufficient to make it proper to hold the party for trial. See, e.g., Peterka, 307 F. Supp. 2d at 1564; Moghadam, 617 F. Supp. at 781-82; (citing Charlton v. Kelly, 229 U.S. 447, 461 (1913)). The essential inquiry is whether there is sufficient evidence of criminal conduct by the person accused to support a reasonable belief that he committed the offense charged. Sayne, 418 F.2d at 485-86.

Although documents presented by the United States on behalf of Albania do not contain a statutory definition of premeditated murder, the proffered evidence establishes (upon sworn testimony) that Mr. Hoxha employed a firearm to shoot and kill the deceased as he rode by Mr. Hoxha on his way home from the market. In the circumstances described by the eye witness, Mr. Hoxha lay in wait for the deceased and the shooting was intentional. Multiple shots were fired. Additionally, two witnesses offer some evidence of a possible revenge motive for the murder. Although not a party to the proceedings, by reason of his absence, Mr. Hoxha was represented by counsel who participated in his defense. Although this court has no basis to measure these circumstances against a statutory definition of premeditated murder, clearly there is evidence which in this country could support such a charge and even conviction for premeditated murder. Further, the decision of the Court of First Instance reflects that counsel for the Defendant attempted to depict the crime as simple murder rather than premeditated murder through questioning of witnesses and argument, and thus the issue of premeditation was clearly raised before the court in Albania. As reflected by the court's decision, the argument was clearly rejected. Apart from his claim of innocence, Mr. Hoxha raises no issue with the court's decision sufficient to warrant relief before this court. In these circumstances, even if the judgment and sentence *in absentia* is merely evidence of probable cause, the court may properly conclude that there is probable cause to bind Mr. Hoxha over on the charge of premeditated murder

4) <u>Whether the Act for which Mr. Hoxha stands convicted is punishable under the criminal laws of the United States as well as under the laws of Albania.</u>

Under the principle of dual criminality, the offense for which Albania requests the extradition of Mr. Hoxha must be illegal both in Albania and under the laws of the United States.[5]  This requirement does not require an exact identity of offenses.  Otherwise stated, "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries.  It is enough if the particular act charged is criminal in both jurisdictions."  <u>Collins,</u> 259 U.S. at 312.

Mr. Hoxha does not seriously challenge this requisite to his extradition.  In any event, according to provisions of the United States Code, murder is a punishable offense in this country just as it is in Albania.  <u>See</u> 18 U.S.C. § 1111.

IV.

In conclusion, the court finds the offense for which Mr. Hoxha stands convicted is one for which he may be extradited under the Treaty between the United States of America and Albania.  There is adequate evidence by which to conclude that Mr. Hoxha is the

---

[5]This court reads the provisions of Article I to the Treaty to impose a requirement of dual criminality as a condition of the extradition.  Under this doctrine, the conduct charged in the requesting country must also be a crime in the requested country.  In particular, as set forth above, Article I states in pertinent part, "provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed."

individual sought by Albania and probable cause to support the allegation of premeditated murder in addition to the conviction *in absentia*. The offense is comparable to a criminal offense in the United States and thus, dual criminality is established.

Accordingly, it is **ORDERED** that Albania's request for extradition of Riza Hoxha is **GRANTED**.

**Done and Ordered** in Tampa, Florida this 19th day of August 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Lt. Diane Croff, Special Assistant United States Attorney
Bryant Camareno, Attorney for Riza Hoxha
U.S. Marshal

12